UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| LEROY BUCKNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-36-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| COMMONWEALTH OF KENTUCKY, | ) | |
| DEPARTMENT OF PARKS, TOURISM, | ) | **MEMORANDUM OPINION** |
| ARTS & HERITAGE CABINET, and | ) | **AND ORDER** |
| ROGER BRYANT II, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Leroy Buckner ("Buckner") filed this action in the Franklin Circuit Court on May 5, 2010. Following removal to this Court, Defendant Commonwealth of Kentucky, Department of Parks, Tourism, Arts & Heritage Cabinet ("Department of Parks"), moved to dismiss all claims asserted against it with the exception of the claim contained in Count 1 which alleged a violation of the Kentucky Civil Right Act, Kentucky Revised Statutes ("KRS"), Chapter 344. Buckner responded by seeking to amend his Complaint to remove his one federal claim and have the remaining counts remanded to state court. Buckner was permitted to remove his federal claim; however, the Court retained jurisdiction over the remaining state law claims.

The matter is now pending for consideration of the Department of Parks' motion to dismiss a number of these claims.[1]

Having reviewed the parties' arguments and authorities, the Court agrees that Buckner's public accommodation claim may not be asserted against the Department of Parks based on the facts outlined in the Amended Complaint and attachments provided by the Plaintiff. Further, the remaining claims which are the subject of the Department of Park's present motion are barred by the doctrine of sovereign immunity. Accordingly, the Department of Parks' motion for partial dismissal will be granted.

**I.**

Bucker is a sixty-one year old African-American male. He was – and is – employed by the Commonwealth of Kentucky as a State Park Ranger Captain with responsibility for supervision and oversight of State Park Rangers in the western portion of Kentucky. Buckner's area of responsibility includes the Barren River Lake State Resort Park.

The Barren River State Resort Park is operated by the Department of Parks, a governmental agency formed pursuant to KRS § 148.001, *et seq.* Defendant Roger Bryant was employed as a cook at the Barren River State Resort Park at times relevant to this action. According to the Plaintiff, Bryant was employed in this capacity from on or about 1998 through

---

[1] As noted, the Department of Parks has not moved to dismiss Count 1. However, it has filed a separate motion to dismiss a new claim contained in Buckner's Amended Complaint and designated as "Count VIII" (¶¶ 71-82). [Record No. 16] This motion is not yet ripe for the Court's review. The new claim essentially repeats the federal claim, but couches it as a violation of the Kentucky Constitution. Buckner's Amended Complaint also references two state law claims as "Count IV." These claims are captioned "Negligent Hiring and Retention" (¶¶ 43-46), and "Assault" (¶¶ 47-53).

approximately August 2001 when he was terminated as a result of the incident giving rise to this civil action. [Record No. 13; First Amended Complaint, ¶¶ 2, 3, 4 & 6]

Buckner alleges that, during his employment as a state park ranger, the Barren River Resort Park has been "a hotbed of racially-motivated discrimination, where African-American employees are constantly being harassed and retaliated against by certain Commonwealth employees." [*Id*., at ¶ 13][2] Buckner claims that, after being forced to endure unidentified acts of racial discrimination and retaliation, and without any effort on the part of the Commonwealth or its management to prohibit the unlawful conduct, he discovered that he had been served food after Defendant Bryant had placed it on his "exposed genitals and . . . armpits, rubbing portions of the food on and around his person . . ."

According to Buckner, Bryant's actions were due solely to Buckner's race and were intended to continue the hostile work environment to which African-Americans were exposed at the Barren River State Resort Park. [*Id*., at ¶ 14] The Plaintiff further contends that Bryant and other caucasian employees have repeatedly engaged in such racially-charged behavior, but have not been subject to any disciplinary action or punishment.[3] He admits, however, that after numerous employees expressed shock and horror regarding the incident involving the manner in which Bryant's food was handled, the Commonwealth "finally investigated the actions and, after two months, issued notice to Bryant of its intent to seek his termination." [*Id*., at ¶ 15, 17]

---

[2] Despite this allegation, Buckner has not identified any racially-related incident at the park prior to the matter allegedly occurring on or about June 18, 2009.

[3] Buckner also alleges that, "[o]n numerous occasions, degrading, improper, and demeaning racial slurs, epithets, and comments were made, posted, and illustrated at Barren River State Resort Park, but no discipline was ever meted out to any employee engaging in said behavior. [*Id*., ¶ 16] Again, no specific incidents of the nature described by Buckner are identified in his Complaint.

Based upon the foregoing allegations, Buckner has now asserted nine counts for relief against the Defendants which include: racial discrimination/harassment in violation of KRS Chapter 344 (Count I); failure to provide public accommodations in violation of KRS Chapter 344 (Count II); intentional infliction of emotional and physical distress/outrageous conduct in violation of Kentucky common law (Count III); negligent hiring and retention in violation of Kentucky common law (Count IV); assault in violation of Kentucky common law (also designated Count IV); fraud, deceit and misrepresentation in violation of Kentucky common law (Count V); statutory negligence based on Bryant's and elected official's alleged violation of KRS Chapter 522 (Count VI); negligence in violation of Kentucky common law (Count VII); and violations of state constitutional and civil rights (Count VIII).

The Department of Parks seeks dismissal of the public accommodation claim outlined in Count II as well as the state law claims contained in Counts III-VII. According to the Department of Parks, it may not be held vicariously liable under Count II. Further, it contends that the remaining state law claims that are the subject of its motion for partial dismissal are barred by the doctrine of sovereign immunity. Buckner opposes the defendant's motion. He contends that disputed factual issues preclude dismissal of his public accommodation claim. Further, he argues that governmental immunity does not bar his remaining state law claims because the operation of a restaurant by the Department of Parks constitutes a proprietary as opposed to a governmental function.

## II.

Under Rule 12 of the Federal Rules of Civil Procedure, a court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and

determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *See Ley v. Visteon Corp.*, 540 F.3d 376, 380 (6th Cir. 2008); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Factual allegations contained in a complaint must raise a right to relief above the speculative level." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In other words, a plaintiff's arguments "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Heightened fact pleading of specifics is not required – only enough facts to state a claim to relief that is plausible on its face. *See Bassett*, 528 F.3d at 426.

Finally, in evaluating Rule 12 motions, the court may consider the complaint as well as "any exhibits attached thereto, public records, [and] items appearing in the record of the case." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).

**III**.

A. *Sovereign Immunity Bars Buckner's Statutory and Common Law Tort Claims Asserted Against the Department of Parks In Counts III through VII of the Amended Complaint.*

In its opening brief, the Department of Parks argues that the initial question presented with respect to sovereign immunity is whether its functions are governmental or proprietary in nature. *See Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001) ("a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function"). And citing its primary duties to protect and preserve the public lands

while making them available to the public, it contends that these duties are "intrinsically governmental." [*See* Record No. 2, pp. 4-5.] In further support of its position, the defendant cites a number of recent decisions of the Kentucky Supreme Court finding the actions of various entities to be governmental functions and, therefore, immune from suit. *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 888 (Ky. 2009) (school board providing housing for night watchman held to be governmental function); *Caneyville Volunteer Fire Dep't. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 804-05 (Ky. 2009) (operation of volunteer fire department held to be a governmental, as opposed to a proprietary, function); *Autry v. Western Ky. Univ.*, 219 S.W.3d 713, 718 (Ky. 2007) (operation of a student dormitory by a state university held to be a governmental function); and *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003) (school board's conducting interscholastic athletics held to be governmental function).

In his response, the Plaintiff seeks to distinguish the *individual* functions being performed by the Department of Parks and thereby argues that immunity is limited. [Record No. 10] However, in its reply, the Department of Parks contends that such an evaluation is unnecessary. [Record No. 14] Notwithstanding its earlier argument, it now asserts that determining whether a governmental entity is performing a governmental or proprietary function is only relevant with respect to "governmental and quasi-governmental entities and departments below the level of the Commonwealth itself." *Comair, Inc. v. LFUCG, et al.*, 295 S.W.3d 91, 94 (Ky. 2009).

As the Defendant correctly points out, The Department of Parks was statutorily created as a department within the Tourism, Arts & Heritage Cabinet and tasked with the statutory responsibility of preserving public lands and making them available for recreational opportunities to members of the public. [Record No. 2, p. 4] In this regard, it has been given

the authority to "improve . . . parks by constructing and equipping improvements or facilities in said parks," and also to "fix fees and charges for the use of said parks and the improvements and facilities constructed therein."  KRS § 148.021 (3) & (4).

Based on its clear statutory authority, the Court concludes that the Department of Parks performs a governmental function.  This includes the operation of restaurants within the various parks located throughout the Commonwealth of Kentucky.  While this conclusion is bolstered by Kentucky Supreme Court's recent decision in *Comair*, 295 S.W.3d 91, the result would be the same under the earlier authorities cited by the parties. When viewed as a whole, the Department of Parks is a state entity that carries out a function integral to state government.  As an agency of the Commonwealth of Kentucky performing a governmental function, the Department of Parks is entitled to sovereign immunity unless such is waived by the state.  And such waiver has not occurred with respect to the claims contained in Counts III through VII of Buckner's Amended Complaint.  Accordingly, the Defendant's motion to dismiss these claims based on sovereign immunity will be granted.

> B. *Buckner's Common Law Claim of Outrage (Count III) Is Also Preempted By The Kentucky Civil Rights Act.*

Kentucky's Civil Rights Act provides, in relevant part, that

> it is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the ground of *disability, race, color, religion, or national origin*.

KRS § 344.120 (emphasis added).[4]

---

[4] The Supreme Court of Kentucky has held that sovereign immunity has been waived with respect to claims under the Kentucky Civil Rights Act. *Dept. of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000).  Recognizing this fact, the Department of Parks has not sought dismissal of Count I.

-7-

Buckner alleges in paragraphs 41 and 42 of his First Amended Complaint that the defendants, jointly and severally, intended to and did inflict several emotional and physical distress upon him in committing the acts alleged in Counts I through III. In other words, he contends that, by virtue of the acts constituting racial discrimination in failing to provide full and equal enjoyment of public accommodations in violation of KRS § 344.120, he became physically distraught and sustained shock to his nervous system and suffered severe emotional and physical distress. [Record No. 13; Amended Complaint, ¶ 41, 42] He contends that such constitutes the tort of outrage which is actionable under Kentucky law.

However, as the Defendant correctly notes in its motion, Buckner cannot pursue a claim for intentional infliction of emotional and/or physical distress because this common law claim has been preempted by Kentucky's Civil Rights Act. *Kroger Co. v. Buckley*, 113 S.W.3d 644, 647 (Ky. App. 2003) (a KRS Chapter 344 claim preempts a common law IIED/outrageous conduct claim"); *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 238 (Ky. App. 2001) (claim for intentional infliction of emotional distress subsumed by claim brought pursuant to KRS Chapter 344); *Messick v. Toyota Motor Mfg., Ky., Inc.*, 45 F.Supp.2d 578, 582 (E.D. Ky. 1999) ("[B]ecause Plaintiff finds an existing form of recovery for her emotional distress under the Kentucky Civil Rights Act, she fails to state a claim of intentional infliction of emotional distress . . ."). As a result, the Department of Park's motion to dismiss this claim also will be granted on this alternate ground.

   C. *Buckner May Not Assert A Public Accommodation Claim Against The Department of Parks Based On Vicarious Liability.*

The Department of Parks points out that, in considering a motion to dismiss, the Court may consider Buckner's pleadings as well as any exhibits that are attached. *Amini v. Oberlin*

*College*, 259 F.3d 493, 502 (6th Cir. 2001). It asserts that, based on the information contained in these documents, it may not be held vicariously liable under KRS § 344.120 for Defendant Bryant's "grotesque acts." [Record No. 2, p. 7]

While an employer may, in some circumstances, be liable for an employee's intentional torts, this exception to the general rule does not apply where, as here, the alleged unlawful actions are well outside the scope of his employment. According to the Supreme Court of Kentucky:

> The critical analysis is whether the employee or agent was acting within the scope of his employment at the time of the tortious act. *Wood v. Sougheastern Greyhound Lines*, 302 Ky. 110, 194 S.W.2d 81 (1946), provides that for it to be within the scope of its employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized. A principal is not liable under the doctrine of respondeat superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment. *Hennis v. B.F. Goodrich Co., Inc.,* Ky., 349 S.W.2d 680 (1961).

*Payne v. Osborne*, 31 S.W.3d 911, 915 (Ky. 2003).

Exhibit A to the Plaintiff's original Complaint contains a six-page letter from Laurie Googe, Human Resources Director for the Department of Parks, directed to Defendant Bryant. The letter is dated July 22, 2009, and indicates hand-delivery to Defendant Bryant on the same day at 6:15 p.m. The letter outlines and addresses two claims of improper conduct by Bryant. The first incident involves preparation and service of unsanitary food to the Plaintiff on June 18, 2009. The second incident addressed in the letter is alleged to have occurred three days later and involved Bryant placing a bucket for donations for black infants and their allegedly unwed single mother at a hostess stand at the park.

Ms. Googe concluded that both incidents violated Department of Park's harassment, harassment prevention, and employee conduct policies and that dismissal was the most justifiable action under the circumstances presented. Although the letter states that Bryant could request a pre-termination hearing, there is no indication in the record whether he sought to avail himself of this due process remedy. However, due to the final date of termination alleged in the Complaint (August 2010), it would seem that some administrative proceedings occurred after Bryant's receipt of the July 22, 2009, letter.

Although Buckner's implies in paragraph 17 of his Complaint and Amended Complaint that the Department of Parks was dilatory in its investigation and that it waited more than two months after the food incident before notifying Bryant that it would seek to terminate him, the letter attached to the Plaintiff's Complaint states that Bryant was placed on leave on June 24, 2009, while the matter was being investigated. Thus, the exhibit submitted by Buckner indicates that the Department of Parks: (i) commenced an investigation almost immediately upon receiving information regarding Bryant's allegedly improper actions; (ii) immediately removed Bryant from his position while the matter was being investigated; and (iii) completed its investigation and notified Bryant of its findings and his right to contest the findings within approximately one month of the initial incident.

With respect to this issue, the Court agrees with the Defendant that the actions taken by Bryant which give rise to Buckner's claims are, by definition, outside the scope of his employment and cannot be viewed as calculated to advance the cause of the principal. If, as Buckner alleges, Bryant's actions were taken with malice or with an intent to discriminate, they cannot be said to have been calculated to advance the Department of Park's cause. As a result,

the Plaintiff's claims of failure to provide full and equal public accommodations by virtue of racial discrimination (Count II) will be dismissed with respect to Defendant Department of Parks.

## IV.

The Department of Parks recognizes that it is not entitled to seek dismissal of Count 1 at this stage of the proceedings. However, it has established that dismissal is appropriate with respect to the claims contained in Counts II through VII of the First Amended Complaint. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Commonwealth of Kentucky, Department of Parks, Tourism, Arts & Heritage Cabinet's motion for partial dismissal [Record No. 2] is **GRANTED**.

2. The following claims contained in Plaintiff Leroy Buckner's First Amended Complaint are **DISMISSED**, with prejudice, with respect to Defendant Department of Parks: Count II ("Failure to Provide Public Accommodation – Racial Discrimination); Count III ("Intentional Infliction of Emotional and Physical Distress/Outrageous Conduct"); Count IV ("Negligent Hiring and Retention"); Count IV ("Assault"); Count V ("Fraud, Deceit, and Misrepresentation"); Count VI ("Statutory Negligence/Violation of Statutory Obligations"); and VII ("Common Law Negligence").

This 10th day of August, 2010.

