UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| LEROY BUCKNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-36-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| COMMONWEALTH OF KENTUCKY, | ) | |
| DEPARTMENT OF PARKS, | ) | **MEMORANDUM OPINION** |
| TOURISM, ARTS & HERITAGE | ) | **AND ORDER** |
| CABINET and ROGER BRYANT II, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Leroy Buckner's Motion to Alter, Vacate or Amend pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. [Record No. 19] For the reasons discussed below, the Court will deny Buckner's motion.

**I.**

The facts of this case are fully set out in the Court's previous Memorandum Opinion and Order dated August 10, 2010. [Record No. 17, pp. 2–4] In that opinion, the Court dismissed Counts III through VII of Buckner's Amended Complaint because the Department of Parks is entitled to sovereign immunity regarding those claims. [*Id.*, pp. 5–7] The Court also dismissed Buckner's public accommodation claim (Count II) against the Department of Parks because the Department is not be held vicariously liable for Bryant's actions that were

-1-

"well outside the scope of his employment." [*Id.*, p. 9] Buckner now asks the Court to amend its prior decision because, he argues, it "applied the wrong standard in determining whether the Commonwealth is responsible for the actions taken by its employee." [Record No. 22, p. 1] However, Buckner argument – which fails to cite any authority for the proposition that a scope-of-employment test is inappropriate in a respondeat superior context – is without merit. Consequently, the relief he seeks will be denied.

## II.

Motions to alter or amend a judgment pursuant to Rule 59(e) are "extraordinary" in nature and should be "sparingly granted." *Marshall v. Johnson*, No. 3:07-171, 2007 U.S. Dist. LEXIS 29881, at *2 (W.D. Ky. Apr. 19, 2007). The Court may grant a Rule 59(e) motion only in limited circumstances: if there is (1) a clear error of law; (2) newly-discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Rule 59(e) does not provide parties a forum to present new arguments or theories that, with proper diligence, could have been asserted prior to the judgment being issued. *See Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008); *GenCorp*, 178 F.3d at 834. Nor is the rule a vehicle to "re-hash old arguments" in an attempt to gain a different result. *Browning v. Pennerton*, No. 7:08-88, 2008 U.S. Dist. LEXIS 90107, at *1 (E.D. Ky. Oct. 24, 2008).

In the present case, Buckner has not cited any newly-discovered evidence or an intervening change in law, so he is apparently arguing that the Court made a clear error of

law. [*See* Record No. 19, p. 2 (asserting that the Court "utilized an erroneous standard not applicable to Kentucky discrimination statutes.")] This Court has previously noted that the manifest-error-of-law standard is a high bar to meet; it requires the "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court." *Dorger v. Allstate Ins. Co.*, No. 2:08-56, 2009 U.S. Dist. LEXIS 61686, at *3 (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (also noting that "[a] 'manifest error' is not demonstrated by the disappointment of the losing party")). To warrant the relief Buckner requests, the previous judgment must be "dead wrong" and "so egregious that an appellate court could not affirm it." *Id.* at *3–4 (quoting *H & A Land Corp. v. City of Kennedale*, No. 4:02-458, 2005 U.S. Dist. LEXIS 25797, at *5 (N.D. Tex. Oct. 24, 2005)). Buckner's motion falls far short of meeting this standard.

## III.

At the outset, it is important to explain precisely what the Court held in its initial Memorandum Opinion and Order, because Buckner repeatedly mischaracterizes (or, perhaps, misunderstands) the Court's ruling. Many of his legal arguments are valid, but they are simply irrelevant because they attack a strawman rather than the Court's actual holding. First, Buckner seems to believe that the Court applied a rule that an employer cannot be liable *per se* for the acts of its employees. [*See* Record No. 19, p. 4 (claiming that the Sixth Circuit had "rejected the very position taken by this Court, in its Opinion, that Plaintiff could not, *under any circumstances*, prove liability by the Commonwealth" (emphasis added)] On the contrary, the Court began its analysis by explaining: "While an employer may, *in some*

*circumstances*, be liable for an employee's intentional torts, this exception to the general rule does not apply where, *as here*, the alleged unlawful actions are well outside the scope of his employment." [Record No. 17, p. 9 (emphasis added)] This explanation makes apparent that the Court did not apply a *per se* rule and recognized that, in certain circumstances, employers may be liable for employees' acts. However, after considering the facts of this particular case, the Court found that this was not one of those circumstances. [*Id.*, pp. 9–11]

Second, Buckner cites *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009), to explain that, under Kentucky law, there is a vast difference between respondeat superior liability and negligent retention or hiring. This point is well-taken, but is irrelevant to a discussion of the Court's previous holding. The Court never applied a negligent retention or hiring test for liability. Instead, throughout its analysis, the Court considered whether Defendant Bryant's actions were within the scope of his employment and whether they advanced the cause of the Department of Parks. [Record No. 17, pp. 9–11] In other words, the Court consistently applied the test for respondeat superior liability. Simply put, Buckner's claim that the Court applied a negligent retention standard mischaracterizes the Court's holding.

Finally, Buckner seems to believe that the Court analyzed the Department of Parks' liability through an employment-based discrimination analysis. [*See* Record No. 22, p. 2 (claiming that "this Court has relied" on a theory of "employment based discrimination")] However, in contesting this point, Buckner seems to be arguing more with himself than with the Court's opinion. Buckner's motion quotes at length from *McDonald's Corp. v. Ogborn*,

309 S.W.3d 274 (Ky. App. 2009). [*See* Record No. 19, pp. 3–4] *McDonald's* was a case based on KRS § 344.040, Kentucky's employment discrimination statute (analogous to Title VII of the Federal Civil Rights Act of 1964). *See McDonald's*, 309 S.W.3d at 286. Following this lengthy citation, Buckner argues that the Court erred by referring to Bryant as a "cook" rather than the "Head Chef." [Record No. 19, p. 5] According to Buckner, this is a particularly important distinction because vicarious liability employment discrimination claims often turn on whether the offending employee was a supervisor. Then, in his reply brief, Buckner goes to great lengths to show why the employer discrimination test — and the accompanying distinction between supervisory and non-supervisory employees — is inapplicable in this case. [*See* Record No. 22, pp. 2–3 (citing *Arguello v. Conoco, Inc.*, 207 F.3d 803, 809–10 (5th Cir. 2000) ("In a public accommodation case such as this, the supervisory status of the discriminating employee is much less relevant than it is in an employment discrimination case.")] Despite Buckner's extensive – and arguably inconsistent – treatment of the topic, the Court never discussed employment-based discrimination in its August 10, 2010, opinion. The Court did not analyze whether Bryant was a "chef" or a "cook" because supervisory status is largely irrelevant to public accommodation cases. *See Arguello*, 207 F.3d at 810. The Court simply considered whether Bryant's actions were within the scope of his employment (the test for respondeat superior liability in the public accommodation context). Buckner's arguments — that the Court: (1) committed error by not recognizing Bryant's supervisory status and (2) committed error by applying an employment discrimination test that focuses on supervisory status — are logically incompatible. More

importantly, neither relates to the Court's *actual* ruling which was based on a scope-of-employment test.

Having clarified its holding, the Court must consider whether it did, in fact, apply an erroneous legal standard to Buckner's claims. As repeatedly stated, the Court's analysis focused on whether Defendant Bryant's alleged acts were within the scope of his employment with the Department of Parks. [*See* Record No. 17, p. 9 ("The critical analysis is whether the employee or agent was acting within the scope of his employment at the time of the tortious act." (internal citations omitted))] The Court stated, "[a] principal is not liable under the doctrine of respondeat superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment." [*Id.* (internal citations omitted)] The Court then considered the relevant facts bearing on the scope-of-employment analysis and ultimately concluded that Bryant's actions could not be considered to advance the purpose of the Department of Parks. Thus, his actions were plainly outside the scope of his employment, and the Department of Parks cannot be held vicariously liable for those acts.

Not one case cited by Buckner vitiates the scope-of-employment test for vicarious tort liability of employers. In fact, many of the cases Buckner finds most condemning of the Court's opinion utilize this precise test. For example, in *Arguello*, which Buckner cites extensively, the Fifth Circuit explained that "[u]nder general agency principles a master is subject to liability for the torts of his servants *while acting in the scope of their employment*." 207 F.3d at 810. [*See* Record No. 22, pp. 6–8] Buckner even quotes, for two full pages, the

Fifth Circuit's analysis of this test. [*Id.*] He seems to believe that because the Fifth Circuit reached a different *conclusion*, this Court must have applied an erroneous legal standard. However, the test applied by this Court is exactly the same as the standard in *Arguello*. It simply reached a different result. Buckner's disappointment in that result is insufficient to justify Rule 59(e) relief.

Further analysis shows that numerous other cases cited by Buckner apply the scope-of-employment test as a threshold to vicarious tort liability. For example, Buckner cites *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705 (Ky. 2009). In *Ten Broeck*, the court concluded that a hospital employee's actions, having sex with patients, were "necessarily outside the scope of employment" and could not be said to further the defendant's interests. *Id.* at 732. Likewise, in *Patterson v. Blair* — cited by Buckner [Record No. 19, p. 3] — the Kentucky Supreme Court explained that "an employer is not vicariously liable for an intentional tort of an employee not actuated by a purpose to serve the employer." 172 S.W.3d 361, 369 (Ky. 2005) (quoting *American Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002)) (emphasis removed). These cases further support the notion that the Court applied the correct legal standard in its previous decision.

### IV.

Buckner has failed to show a manifest error of law in the Court's August 10, 2011, Memorandum Opinion and Order. Accordingly, it is hereby

**ORDERED** that Plaintiff Leroy Buckner's Motion to Alter, Vacate, or Amend [Record No. 19] is **DENIED**.

This 5th day of April, 2011.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge