UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| LEROY BUCKNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-36-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ROGER BRYANT II, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Leroy Buckner's unopposed motion for summary judgment. [Record No. 65] Buckner seeks summary judgment on claims of assault and battery, intentional infliction of emotional distress ("IIED"), and statutory and common law negligence. For the reasons explained below, the Court will grant Buckner's motion on the battery claim. The motion will be denied regarding the remaining claims.

## I.

Buckner is an African-American male employed by the Commonwealth of Kentucky as a State Park Ranger Captain. In that position, he is responsible for the supervision and oversight of State Park Rangers in the western portion of Kentucky. His area of responsibility includes Barren River Lake State Resort Park which is operated by the Department of Parks (the "Department"), an agency of the Commonwealth of Kentucky. Defendant Roger Bryant II was employed as a cook at Barren River Lake State Resort Park at times relevant to this action.

On June 18, 2009, Buckner entered the dining room at the Barren River Lake State Resort Park. Bryant saw him walk in and "muttered something negative," apparently because "Buckner had given [him] a speeding ticket." [Record No. 65, pp. 2-3 (internal quotation marks omitted)] Buckner ordered a fish sandwich from the server, Ms. Pickerel. However, when Bryant learned that it was Buckner who had requested the sandwich, he refused to prepare it. Bryant told Pickerel to direct Buckner to serve himself from the buffet if he wanted to receive the employee discount. Buckner agreed to pay full price, and Bryant began to prepare the sandwich. However, he was "aggravated about it" and proceeded to "put the piece of lettuce that was prepared for Mr. Buckner's sandwich down [his] pants and rub the lettuce around [his] genital area." [*Id.*, p. 4] The sandwich was served to Buckner with the lettuce on it. When asked why he did it, Bryant stated that he "didn't like niggers and that this nigger was an asshole and deserved it." [*Id.*]

Buckner filed suit against the Department and Bryant on May 5, 2010. The case was removed to this Court on June 4, 2010. [Record No. 1] Buckner filed an Amended Complaint on July 29, 2010. [Record No. 13] Because the Court has dismissed the claims against the Department [Record Nos. 17, 23, 51], the remaining claims are asserted against Bryant. They include: Physical Distress/Outrageous Conduct (Count III); Assault (Count IV); Statutory Negligence/Violation of Statutory Obligations (Count VI); and Common Law Negligence (Count VII).

Although Bryant was initially involved in defending this action, he failed to appear at two settlement conferences in August 2012. In addition, plaintiff's counsel has been unable to

contact him since that time.  [*See* Record Nos. 54, 58, 59, 61.]  The Court held a pretrial conference in this matter on January 15, 2013.  At the conference, the Court set aside the trial date and gave Buckner until February 15, 2013 to move for summary judgment regarding liability issues.  [Record No. 64]  Buckner filed his motion for summary judgment on February 4, 2013.  Because Bryant has not responded to the motion, the Court will proceed without the benefit of a response.

## II.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists.  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).  Once the moving party has met its burden of production, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment.  *Chao*, 285 F.3d at 424.  The nonmoving party cannot rely upon the

assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III.

To support of his motion, Buckner relies on the findings made by the Department after its investigation into the events giving rise to the lawsuit. He reproduces the bulk of these findings in his motion. [Record No. 65, pp. 2-5] The plaintiff asserts that the investigation's findings, while hearsay, are admissible under Federal Rule of Evidence 803(8), which excludes from the hearsay rule any "record or statement of a public office" that meets certain criteria. Fed. R. Evid. 803(8). Indeed, "the Supreme Court has held that a report that contains [an] agency's conclusion or opinion formed as the result of a factual investigation is admissible under this rule." *Alexander v. CareSource*, 576 F.3d 551, 561-62 (6th Cir. 2009). Thus, the Court will consider the Department's findings when analyzing Buckner's motion for summary judgment. The Department made the following conclusions after its investigation: (1) Bryant "maliciously put the lettuce down [his] pants and presented the sandwich to be served to Mr. Buckner"; (2) the behavior was "egregious and inappropriate in the workplace"; and (3) Bryant's "actions of intentionally contaminating a food product and then knowingly serving that product to a customer is despicable, grossly outside the scope of [Bryant's] job duties, and a violation of local and federal food handling guidelines." [Record No. 65, pp 4-5]

-4-

## A.     Battery

Buckner asserts a claim for "physical assault on [his] person."[1]  [Record No. 13 ¶ 50]  He seeks summary judgment on this claim, alleging that "Bryant's actions, by their very nature, constitute an unwanted physical . . . battery on Plaintiff's person."  [Record No. 65, p. 8] "Battery is any unlawful touching of the person of another, either by the aggressor, or by any substance set in motion by him."  *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. Ct. App. 2006). To establish a battery claim, the plaintiff must prove that the defendant acted with the "intent to make contact with the person," but he does not have to prove that the defendant intended to cause harm.  *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000); *see Banks*, 39 S.W.3d at 480 ("[I]ntent is an essential element of . . . battery.").

Here, the Department's findings are sufficient to demonstrate Bryant's intent.  [Record No. 65, p. 4 ("Mr. Ogden asked [Bryant] if [he] served the lettuce to the guest and [Bryant] said 'Yes I did,' smiled and walked off." (internal quotation marks omitted; alterations in original))] Additionally, the contact was clearly unwanted and offensive.  [*Id.*, p. 5]  However, Buckner does not allege that Bryant made direct physical contact with his person.  Therefore, whether the events described in the Amended Complaint qualify as a battery depends on the interpretation of the last part of the rule stated in *Andrew*, 203 S.W.3d at 171.  In other words, was the

---

1       Although Count IV of the Amended Complaint is entitled "Assault," the claim asserted here is more accurately described as common-law battery.  Under Kentucky law, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching."  *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001).  Count IV of the First Amended Complaint contains allegations that Bryant "did in fact inappropriately assault Plaintiff's person."  [Record No. 13 ¶ 48]  Because Bryant's actions involved actual physical contact, rather than the imminent threat of such contact, battery — and not assault — is the proper cause of action.  The Court will thus construe Count IV as stating a claim for battery.

contamination of Buckner's food a "substance set in motion by" Bryant that, in turn, unlawfully touched Buckner?

The "substance set in motion" language was initially part of the definition for criminal battery, and was first adopted as part of the definition for civil battery in *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. Ct. App. 1967). Although Kentucky courts continue to apply this definition of battery, none of those cases are factually similar to this action. *Sigler* itself involved defendant who "pressed a gun against [the plaintiff's] body and fired." *Id.* at 240. In *Andrew*, the plaintiff asserted a claim for battery following a medical evaluation. 203 S.W.3d at 168-69. Similarly, in *Vitale*, the claim for battery was based on an operation performed without the patient's consent.[2] 24 S.W.3d at 656. Thus, to the extent that the issue arose at all, it appears that most Kentucky courts have generally treated the term "substance" to mean "object." *See Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 530841, at *10 (W.D. Ky. Feb. 11, 2013).

However, two federal district courts sitting in Kentucky have addressed the issue of whether battery claims involving "particulate touching" are viable. In *Powell v. Tosh*, No. 5:09CV-121-R, 2011 WL 1674957 (W.D. Ky. May 3, 2011), the plaintiffs sought to amend their complaint to include a battery claim, alleging "a touching of their person by 'hazardous and/or noxious chemicals, particulates, and/or odors'" originating from the defendants' hog barn. *Id.* at *1. Although the defendants argued that such claims failed as a matter of law, the Court

---

2       The criminal cases that used this definition of battery are also inapposite. *See, e.g.*, *Commonwealth v. Remley*, 77 S.W.2d 784, 784-85 (Ky. Ct. App. 1934) (noting that "the accused with his hand or fist hit [the victim] on the eye, breaking his glasses, injuring the corner and ball of the eye, and requiring five stitches to be taken").

allowed the amendment, concluding that there was a valid claim for battery if the plaintiffs could prove that "the acts in question were intentional and that [they] suffered the alleged injuries." *Id.* To determine whether the claim was "supported at law," the court considered a negligence case from the Supreme Court of Kentucky and a battery case from the Court of Appeals of Ohio. *Id.* The Supreme Court of Kentucky found that x-rays could make "physical contact" with a person's body in *Deutsch v. Shein*, 597 S.W.2d 141, 146 (Ky. 1980).[3] Similarly, in *Leichtman v. WLW Jacor Communications, Inc.*, 634 N.E.2d 697 (Ohio Ct. App. 1994), the Ohio court found that "tobacco smoke, as 'particulate matter,' has the physical properties capable of making contact." *Id.* at 699. Based on the holding in these cases, the district court concluded that the plaintiffs had stated a "valid claim for battery."[4] *Powell*, 2011 WL 1674957, at *1.

Further support for the particulate touching theory of battery is found in *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636 (E.D. Ky. 2011). There, the district court considered a motion to dismiss a battery claim where the plaintiffs alleged that the defendants caused "coal dust to come in physical contact with many of the Plaintiffs through the inhalation of coal particles." *Id.* at 647. As in *Powell*, the court conducted a survey of cases from Kentucky and neighboring states to determine whether "particulate touching qualif[ies] as

---

3        The court considered this physical contact in the context of a "claim for compensation for mental suffering." 597 S.W.2d at 145. At the time when *Deutsch* was decided, Kentucky followed the "impact rule" whereby "an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury." *Id.* at 145-46. The court has since abandoned that rule, and now requires only a "severe or serious emotional injury" rather than proof of physical contact. *Osborne v. Keeney*, No. 2010-SC-000397-DG, 2012 WL 6634129, at *9 (Ky. Dec. 20, 2012) (internal quotation marks omitted).

4        The district court recently granted summary judgment to the defendants on this claim due to the plaintiffs' failure to prove intent. *Powell v. Tosh*, No. 5:09-CV-121-R, 2013 WL 900152, at *13 (W.D. Ky. Mar. 8, 2013).

'touching' for purposes of battery" under Kentucky law.[5]  However, the defendants in *Barnette* did not argue against the existence of a "particulate touching" battery claim.  Rather, they based their challenge on the plaintiffs' "failure to allege personal injuries."  *Id.* at 648.  The court denied the motion to dismiss because, in Kentucky, "'neither physical injury nor actual damage must be proved by the plaintiff'" to succeed on a claim for battery.  *Id.* (quoting 13 Ky. Prac. Tort Law § 2:1 (2010)).

Here, Bryant "put the piece of lettuce that was prepared for Mr. Buckner's sandwich down [his] pants." [Record No. 65, p. 3 (internal quotation marks omitted)]  Additionally, a co-worker heard Bryant say "'ooh boy its been a sweaty day.'" [*Id.*]  The fish sandwich was then served to Buckner with the piece of lettuce on it.  [*Id.*, p. 4]  This series of events indicates that particles from Bryant's body — those which the Department found to have "contaminated" the food [*Id.*, p. 3] — came into physical contact with Buckner through his ingestion of the sandwich.  Based on the reasoning in *Powell*, *Deustch*, and to some extent *Barnette*, the Court concludes that the Kentucky courts would recognize a claim for battery under the facts of this case.  Buckner has met his burden of proving the elements of battery, and the Court will grant his motion for summary judgment on this claim.

---

5       In addition to the cases reviewed in the *Powell* decision, the *Barnette* court considered a Fourth Circuit case that rejected particulate touching as a theory for establishing a battery claim under West Virginia law.  809 F. Supp. 2d at 647.  However, "to prove a battery under West Virginia law, a plaintiff generally must demonstrate that the defendant inflicted a harmful bodily contact on the plaintiff."  *Rhodes v. E.I. du Pont Nemours & Co.*, 636 F.3d 88, 95 (4th Cir. 2011).  In Kentucky, a claim for battery may succeed if the contact was offensive.  *Vitale*, 24 S.W.3d at 657.  Therefore, *Rhodes* is inapposite.

-8-

**B.      IIED**

To establish an IIED claim under Kentucky law, the plaintiff must prove the following: "(1) the wrongdoer's conduct must be intentional or reckless, (2) the conduct must be outrageous and intolerable, (3) there must be a causal connection between the conduct and the emotional distress, and (4) the emotional distress must have been severe." *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 238 (Ky. Ct. App. 2001) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)). However, "the tort of outrage is intended as a 'gap-filler'[] providing redress for extreme emotional distress where traditional common law actions do not." *Banks*, 39 S.W.3d at 481. Thus,

> [w]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action. The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up.

*Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993).

Because Buckner has succeeded on his battery claim, his claim for IIED must fail.[6] Bryant's actions constitute a battery; they cannot also form the basis for Buckner's recovery under a theory of outrage. As a result, the Court will deny Buckner's motion for summary judgment regarding the IIED claim.

---

6      Battery appears to fit the facts of this case better than IIED. In *Banks*, the Kentucky Court of Appeals explained that for an IIED claim to be successful, the plaintiff must show that the defendant's actions "were intended only to cause him extreme emotional distress, rather than to merely touch . . . him." 39 S.W.3d at 481. Because there is no evidence that Bryant intended for Buckner to learn about the improper preparation of his fish sandwich, it would appear that Bryant's intent was to cause the unwanted and offensive touching, not necessarily the resulting emotional distress.

C.      Negligence

Buckner argues that he is entitled to summary judgment on his claims for common law and statutory negligence. He alleges in his Amended Complaint that Bryant's "actions . . . constitute a blatant violation of . . . [his] statutory obligations to Plaintiff." [Record No. 13 ¶ 62] Additionally, he contends that "Bryant knew, or should have known, that this egregious misconduct was illegal, improper, unsanitary, and exposed Plaintiff and his person to negligence." [*Id.* ¶ 69]

1.      Common Law Negligence

Buckner asserts a claim for common law negligence. He alleges that Bryant "engaged in intentional and negligent acts that resulted in damage to Plaintiff's person." [Record No. 13 ¶ 68] "A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). In a negligence action, the "question of duty presents an issue of law." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). Here, the Court concludes that, as the person preparing food for others, Bryant owed a duty to the patrons of the Barren River State Resort Park "to exercise ordinary care in his activities to prevent any foreseeable injury from occurring to such other person." *M&T Chems., Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974). Additionally, Buckner has shown that Bryant breached this duty by "'intentionally contaminating a food product and then knowingly serving that product to a customer.'" [Record No. 65, p. 5 (quoting the Department's findings)]

-10-

However, Buckner has failed to establish the third element of this claim.  In a negligence action, the "focus . . . is on physical injury rather than emotional distress." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012) (noting that if negligent "conduct causes severe emotional distress that then results in physical symptoms, then the claim does not lie in negligence but rather in intentional infliction of emotional distress").  As a result, the Kentucky courts have consistently "declined to permit recovery for mental distress unaccompanied by physical harm" in negligence actions. *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 952 (Ky. 2002) (explaining that "'proof of damage [is] an essential part of the plaintiff's case'" (quoting *Saylor v. Hall*, 497 S.W.2d 218, 225 (Ky. 1973)).  Buckner makes no specific arguments concerning common law negligence in his motion for summary judgment.  And although the First Amended Complaint asserts that Bryant's actions "resulted in damages to Plaintiff's person" [Record No. 13 ¶ 68], the plaintiff has not presented any evidence to support the allegation that he was physically harmed by Bryant's actions.  Despite the fact that this motion for summary judgment is unopposed, Buckner still bears the burden of showing that no genuine issue of material fact exists. *CenTra*, 538 F.3d at 412.  Buckner has failed to meet his burden of production on the issue of his injury.  Thus, he is not entitled to summary judgment on the claim for common law negligence.

### 2. Statutory Negligence/Negligence *Per Se*

Buckner also asserts a claim for statutory negligence, contending that the "violation of a public safety regulation may . . . form the basis of negligence *per se*."[7]  [Record No. 65, p. 9]

---

7    The fact that Buckner has asserted a claim for common law negligence does not prevent him from recovery under a different theory of negligence. *Cf. Terry v. Elam*, No. 2011-CA-001006-ME, 2012 WL 4038419, at *2-5 (Ky. Ct. App. Sept. 14, 2012) (affirming grant of summary judgment on common law negligence claim where summary judgment had previously also been granted on negligence *per se* claim).

-11-

Section 446.070 of the Kentucky Revised Statutes ("KRS") provides that any "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS § 446.070; *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) ("The Kentucky General Assembly enacted this statute in 1942 to codify common law negligence per se."). The provision supplies "an avenue by which a damaged party may sue for a violation of a statutory standard of care if the statute in question provides no inclusive civil remedy and if the party is within the class of persons the statute is intended to protect." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008) (noting that KRS § 446.070 "is limited to Kentucky statutes and does not extend to federal statutes . . . or local ordinances").

Buckner asserts that Bryant violated various provisions of the Kentucky Food, Drug and Cosmetic Act (the "Act"). This set of statutes prohibits the "adulteration . . . of any food."[8] KRS § 217.175(2). Additionally, under the Act, "[a]ll persons who handle the food shall, before beginning work and after visiting the toilet, wash their hands thoroughly in clean water." KRS § 217.350; *see* KRS § 217.990(1) (providing penalties for persons who violate the hand-washing requirement). As Buckner points out, the Act provides no "remedies to the injured party who is actually exposed to the contamination and adulteration and subject to exposure to illness, increased health risk, etc." [Record No. 65, pp. 10-11] Therefore, pursuant to KRS § 446.070, he seeks judgment as a matter of law on his "claims alleging negligence *per se* against Defendant Bryant." [*Id.*, p. 11]

---

8       Food is deemed adulterated if "it consists in whole or in part of a diseased, contaminated, filthy, putrid, or decomposed substance." KRS § 217.025(1)(c).

It is well-established that "negligence per se is merely a negligent claim with a statutory standard of care substituted for the common law standard of care." *Pile v. City of Brandenburg*, 215 S.W.3d 36, 41 (Ky. 2006); *see Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. Ct. App. 2004) ("In fact, the only discernable difference between common-law negligence and negligence per se is how they are proved." (internal quotation marks omitted)).   Here, Buckner has established that Bryant violated certain provisions of the Act when he served the contaminated fish sandwich.  Therefore, he has sufficiently proved that Bryant had a duty and that he breached that duty.  However, the violation of a statute or regulation is only the "basis for liability if found to be a substantial factor in causing the result" — *i.e.*, the injury. *Britton v. Wooten*, 817 S.W.2d 443, 447 (Ky. 1991).  In other words, "causation and injury must still be proved in negligence per se claims." *Stivers*, 140 S.W.3d at 601.  For the reasons stated above, the Court finds that Buckner has failed to prove the injury element of his claim for negligence.  Therefore, the Court will deny his motion for summary judgment on this claim.

## IV.

Buckner is entitled to judgment on his battery claim (Count IV of the Amended Complaint).  However, because the plaintiff cannot recover damages for both the traditional tort of battery and his claim for IIED, his motion for summary judgment on Count III will be denied. Additionally, Buckner has failed to meet his burden regarding the negligence claims that he asserts (Count VI and VII).  Accordingly, it is hereby

**ORDERED** as follows:

-13-

1.      Plaintiff Leroy Buckner's Motion for Summary Judgment [Record No. 65] is **GRANTED** with respect to Buckner's claim for battery (Count IV).  The motion is **DENIED** with respect to Buckner's claims for intentional infliction of emotional distress (Count III), statutory negligence (Count VI), and common law negligence (Count VII).

2.      The plaintiff may request that the Court set the matter for jury trial on the issues of liability and damages regarding Counts VI and VII.  Additionally, he may also seek to have this matter scheduled for jury trial on damages under Count IV (Battery).  Alternatively, he may seek a bench trial on any or all of these claims.

3.      Within ten (10) days of the entry of this Memorandum Opinion and Order, the plaintiff is directed to file a Request for Trial on Specified Claims.  In this pleading, Buckner shall specifically identify the claims on which he wishes to proceed.  He shall also designate whether he request a bench or jury trial on the claims that the Court has identified.  The matter shall be scheduled for a pre-trial conference and/or trial upon the receipt of this pleading.

This 25th day of March, 2013.

Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**

-14-